UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| MARCELA TARAZON, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING LLC, and JOHN DOES 1 to 10,<br><br>Defendants. | Civil Action No.: 7:18-cv-00081 |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND THE TEXAS DEBT COLLECTION ACT AND DEMAND FOR JURY TRIAL**

Plaintiff, MARCELA TARAZON ("TARAZON"), individually and on behalf of all others similarly situated, by way of Complaint against Defendants, MIDLAND CREDIT MANAGEMENT, INC. ("MCM"), MIDLAND FUNDING LLC ("MIDLAND FUNDING"), and JOHN DOES 1 to 10 ("DOES"), says:

**I.    NATURE OF THE ACTION**

1.    Plaintiff, on her own behalf and on behalf of the class she seeks to represent, and demanding a trial by jury, brings this action for the illegal practices of the Defendants who used unfair, unconscionable, false, deceptive, and misleading practices, and other illegal practices, in connection with its attempts to collect alleged debts from the Plaintiff and others. Plaintiff alleges that Defendants' collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (FDCPA), *et seq.* and Texas Debt Collection Act, Tex. Fin. Code § 392, *et seq.* ("TDCA").

2.The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

3.The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. In reviewing an FDCPA complaint, courts "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard, assuming that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *McMurray v. ProCollect, Inc.*, 687 F.3d 665 (5th Cir. 2012).

4.To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations are: making false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2)(A); the threat to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

5. To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8). Among these *per se* violations are: the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law, 15 U.S.C. § 1692f(1).

6. The TDCA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices for the purpose of collecting a consumer debt. Tex. Bus. & Com. Code Ann § 17.50; *Cushman v. GC Services, L.P.*, 397 Fed. Appx. 24 (5th Cir. 2010) (discussing the "tie-in" provision between the TDCA and deceptive practices Acts).

7. The Plaintiff, on behalf of herself and all others similarly situated, seeks statutory damages, injunctive relief, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA, TDCA, and all other common law or statutory regimes.

8. This case involves an obligation, or an alleged obligation, primarily for personal, family, or household purposes, and arising from a transaction or alleged transaction. As such, this action arises out of "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

## II.    PARTIES

9. TARAZON is a natural person.

10. At all times relevant to the factual allegations of this Complaint, TARAZON was a citizen of, and resided in Hidalgo County, Texas.

11.     At all times relevant to the factual allegations of this Complaint, MCM was a for-profit corporation existing pursuant to the laws of Kansas.

12.     On information and belief, MCM maintains its principal place of business at 3111 Camino Del Rio North, Suite 1300, San Diego, California 92108.

13.     On information and belief, MCM is registered to transact business in the State of Texas.

14.     At all times relevant to the factual allegations of this Complaint, MIDLAND FUNDING was a Limited Liability Company formed under the laws of Delaware.

15.     On information and belief, MIDLAND FUNDING is registered to transact business in the State of Texas.

16.     On information and belief, MIDLAND FUNDING maintains its principal place of business at 3111 Camino Del Rio North, Suite 1300, San Diego, California 92108.

17.     DOES are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of the DOE defendants once they are ascertained.

18.     On information and belief, and based on advice of counsel, DOES are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with, conspired with, engaged in, and oversaw the violative policies and procedures used by the employees of the named Defendants that are the subject of this Complaint. DOES personally control, and are engaged in, the illegal acts, policies, and practices utilized by the named Defendants and, therefore, are personally liable for all the wrongdoing alleged in this Complaint.

## III. JURISDICTION AND VENUE

19. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331 & 1337

20. Supplemental jurisdiction for Plaintiff's state law claims arises under 28 U.S.C. § 1367.

21. Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred within this federal judicial district, and because the named Defendants each regularly transact business within this federal judicial district and, therefore, reside in the State of Texas within the meaning of 28 U.S.C. § 1391(b) and (c).

## IV. FACTUAL ALLEGATIONS

22. By primarily acquiring charged-off consumer credit accounts and, through the use of agents such as MCM, MIDLAND FUNDING's principal purpose is the collection of debts.

23. MCM is regularly engaged in the collection of debts.

24. MCM regularly collects or attempts to collect debts alleged to be owed others.

25. MCM is a business the principal purpose of which is the collection of debts.

26. In attempting to collect debts, MCM uses the mails, telephone, internet, and other instruments of interstate commerce.

27. MCM mailed TARAZON a letter dated March 15, 2017 ("First Letter").

28. A true and correct copy of the First Letter is attached as *Exhibit A*, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted the financial account numbers and TARAZON's home address to protect TARAZON's privacy.

29. MCM mailed TARAZON a second letter also dated March 15, 2017 ("Second Letter").

30. A true and correct copy of the Second Letter is attached as *Exhibit B*, except that

the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted the financial account numbers and TARAZON's home address to protect TARAZON's privacy.

31. The First Letter and Second Letter are collectively referred to hereinafter as the "Letters".

32. With the exception of the specific account information, the Letters are substantively identical.

33. On information and belief, the Letters were created by merging information specific to a debt and consumer with a template to create what is commonly called a "form letter."

34. Consequently, on information and belief, the same form letter was mailed by MCM on behalf of MIDLAND FUNDING to others, like TARAZON, using a Texas address in an attempt to collect a debt.

35. Based on the information in the Letters, MCM has asserted TARAZON is obligated to pay money ("Debts") to MIDLAND FUNDING.

36. The alleged Debts arise from one or more credit transactions that were primarily for personal, family, or household purposes.

37. On information and belief, the Debts were acquired by MIDLAND FUNDING for the purpose of collecting it from TARAZON.

38. The Debts were acquired by MIDLAND FUNDING after the Debts were in default.

39. On information and belief, the Debts were in default and the last payments had been made more than four years prior to March 15, 2017.

40. As of March 15, 2017, neither MIDLAND FUNDING nor MCM had any legal right to sue TARAZON to collect the Debts which had become legally unenforceable due to the lapse of time.

41. The Debts were placed with, obtained by, or assigned to MCM for the sole purpose of collecting or attempting to collect the Debts.

42. MCM contends the Debts were in default at the time they were placed with, obtained by, or assigned to MCM for collection.

43. The Letters are written in Spanish.

44. The Letters offer to settle Debts that are time-barred by the statute of limitations and, therefore, are legally unenforceable.

45. The Letters made multiple settlement offers including offers that encouraged TARAZON to save money by making a lump sum payment, or making a down payment and subsequent monthly payments.

46. Translated to English, the Letters state, in relevant part:

> "The law limits the time you can be sued for a debt. Due to the age of your debt, we will not initiate a lawsuit."

47. As used in the Letters, "we" means MCM because, *inter alia*, the Letters are on MCM's letterhead, states it "is from MCM," was only sent by MCM, and only provides MCM's contact information.

48. The Letters identified MIDLAND FUNDING as the current creditor.

49. The language of the Letters give the false impression to least sophisticated consumers that only MCM has voluntarily chosen not to sue TARAZON, instead of stating that neither MIDLAND FUNDING *nor* MCM may/will sue her to collect the Debts because the statute of limitations had expired and, therefore, the Debts are legally unenforceable.

50. Additionally, the Letters do not even hint, let alone make clear to the recipient, that if s/he makes a partial payment or even just a promise to make a partial payment, s/he risks loss of the otherwise ironclad protection of the statute of limitations.

51. Rather than state that the *creditor* of the Debts cannot, and will never, sue TARAZON to collect the Debts, the Letters falsely implied that only MCM made a decision not to sue.

52. On information and belief, MCM never sues on any debts it attempts to collect for others. Therefore, the Letters falsely implied to the least sophisticated consumer that MCM can, and does, sue to collect debts.

53. By contrast, MIDLAND FUNDING files thousands of lawsuits to collect debts in the State of Texas, and it is aggressive in pursuing the judgements it obtains by falsely simulating legal process which threaten consumers with imprisonment, fines, and contempt findings; it also tries to have receivers appointed by Texas courts to take possession of consumers property and assets.

54. The Letters failed to state MIDLAND FUNDING neither could, nor would, file a lawsuit to collect the Debts. Therefore, the Letters falsely implied to the least sophisticated consumer that s/he might be sued by the current creditor.

55. The Federal Trade Commission ("FTC") has determined that "Most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations.... When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt." (See http://www.ftc.gov/opa/2012/01/asset.shtm).

56. In early 2012, the FTC entered into a consent decree with Asset Acceptance requiring that it disclose to consumers when it is attempting to collect debts that are barred by the statute of limitations. *United States of America (For the Federal Trade Commission) v. Asset Acceptance, LLC*, Case No. 8:12-cv-182-T-27EAJ (M.D.Fla.).

57. On October 1, 2012, the Consumer Financial Protection Bureau, which has taken over much of the FTC's enforcement responsibility and has been granted rule-making authority with respect to debt collection, the Federal Deposit Insurance Corporation, the Federal Reserve Board, and the Office of the Comptroller of the Currency entered into consent orders with three American Express-related entities requiring disclosure that debts they attempt to collect were time-barred. 2012-CFPB-0002; 2012-CFPB-0003; 2012-CFPB-0004. The orders require that "the Bank shall continue to provide disclosures concerning the expiration of the Bank's litigation rights when collecting debt that is barred by the applicable state statutes of limitations...." (2012-CFPB-0002, p. 6 of 35, 2012-CFPB-0003, p. 5 of 28).

58. The October 1, 2012 orders further require disclosure of "all material conditions, benefits and restrictions concerning any offer of settlement. . . ." (2012-CFPB-0002, p. 7 of 35, 2012-CFPB-0003, p. 6 of 28). Thus, they recognize that "settlement offers" that fail to disclose material information may be misleading.

59. On January 30, 2013, the FTC issued its report, *The Structure and Practices of the Debt Buying Industry*, available at http://www.ftc.gov/os/2013/01/ debtbuyingreport.pdf. The report reaffirms its position in the United States of America v. Asset Acceptance, LLC, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), American Express Centurion Bank (FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002), American Express Bank, FSB (2012-CFPB-0003) and American Express Travel Company, Inc. (2012-CFPB-0004) cases, that a defendant may violate the

FDCPA by sending a collection letter demanding payment of a time barred debt without disclosing that the debt was time barred.

60. The report cites to a study (Timothy E. Goldsmith & Natalie Martin, *Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts?*, 64 Consumer Fin. L.Q. Rep. 372 (2010)) that establishes the disclosure that a debt is time barred in a debt collection letter is material to the consumer.

61. The Fifth Circuit and other courts have also held that a debt collector's "settlement" offer made to consumers on time-barred debts are misleading. *See, e.g., Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016); *Tatis v. Allied Interstate, LLC*, No. 16-4022, 2018 U.S. App. LEXIS 3238 (3d Cir. Feb. 12, 2018); *Buchanan v. Northland Group, Inc.*, 776 F.3d 393 (6th Cir. 2015); and *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014).

62. Defendants' carefully crafted language in the Letters, was chosen to obscure from least sophisticated consumers that the law prohibits Defendants from suing to collect the Debts or even from threatening to do so, is the sort of misleading tactic the FDCPA prohibits.

63. The only reason to use such carefully ambiguous language is the expectation that at least some least sophisticated consumers will misunderstand and will choose to pay on the ancient, time-barred debts because they fear the consequences of not doing so.

64. The Letters fail to inform the least sophisticated consumer that MIDLAND FUNDING will issue a 1099-C form to the Internal Revenue Service if any of the settlement offers are accepted.

65. The Letters also fail to inform the least sophisticated consumer there may be tax consequences if any of the settlement offers are accepted.

## V.    CLASS ALLEGATIONS

66.    Plaintiff brings this action individually and as a class action on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

67.    Subject to discovery and further investigation which may cause Plaintiff to modify the class definition to be more inclusive or less inclusive, Plaintiff defines the "Class" to include:

> Each natural person to whom MCM mailed a letter during the Class Period to a Texas address in connection with its attempt to collect on an account then-owned by MIDLAND FUNDING which letter (a) was dated on or after March 15, 2017 but on or before April 5, 2018, (b) was not shown in MCM's records as having been returned by the Postal Service as undeliverable, (c) included the following language or substantially similar language:
>
> *The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it.*
>
> and (d) failed to warn the consumer of the consequences that might befall the consumer if s/he makes a partial payment or promise to make a partial payment.

68.    The Class excludes each person who, prior to the date this action is certified to proceed as a class action, either (a) died, (b) obtained a discharge in bankruptcy, (c) commenced an action in any court against Defendants alleging a violation of the FDCPA or the TDCA based on a letter, or (d) signed a general release of claims against MCM or MIDLAND FUNDING. The Class also excludes counsel for Plaintiff, or an employee or family member of counsel for Plaintiff.

69.    Based on discovery and further investigation (including, but not limited to, disclosure of class size and net worth), Plaintiff may, in addition to moving for class certification using modified definitions of the Class and Class Claims, seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

70. The identity of each member of the Class is readily ascertainable from the records of Defendants and those records of the entity on whose behalf Defendants sought to collect debts.

71. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Fed. R. Civ. P. 23(a) because there is a well-defined community interest in the litigation in that:

> 71.01. *Numerosity*. The members of the Class are so numerous that joinder of all members would be impractical. On information and belief, there are at least 40 members of the Class.
>
> 71.02. *Commonality*. Common questions of law and fact exist as to all members of the Class, the principal issues are: whether the conduct of Defendants, as described above under *Factual Allegations*, was the same or substantially similar with respect to the attempts by Defendants to collect debts from Plaintiff and members of the Class; and whether such conduct violated the FDCPA and TDCA.
>
> 71.03. *Typicality*. The claims of Plaintiff are typical of the claims of the class members. Plaintiff and all members of the Class have claims arising out of the common and uniform course of conduct as set forth in the *Factual Allegations*.
>
> 71.04. *Adequacy*. Plaintiff will fairly and adequately protect the interests of the class members because the interests of Plaintiff are not known or believed to be averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions.

72. This action may be maintained as a "B1a-class", a "B2-class", a "B3-class", or a hybrid class however, at the time of commencing this action, certification is expected to be sought under Fed. R. Civ. P. 23(b)(3) because the questions of law and fact common to members of the Class appear to predominate over any questions affecting an individual member, and a class action would be superior to other available methods for the fair and efficient adjudication of the controversy due to individual joinder of all members being impracticable, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender, an important public interest will be served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

## VI. COUNT ONE: VIOLATION OF THE FDCPA.

73. The *Factual Allegations* are incorporated by reference.

74. MIDLAND FUNDING is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

75. MCM is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

76. The Debts are each a "debt" within the meaning of 15 U.S.C. § 1692a(5).

77. TARAZON is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

78. The Letters are each a "communication" within the meaning of 15 U.S.C. § 1692a(2).

79. Defendants failed to comply with the FDCPA with respect to Plaintiff.

80. Such failure includes but is not limited to:

    80.01. Using false, deceptive, or misleading representations and/or means in connection with the collection of any debt, which constitutes a violation of 15

U.S.C. §1692e; and

80.02.  Using unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f;

81. The Defendants' illegal conduct invaded the rights of Plaintiff which are protected by the FDCPA, the invasion of which caused injury-in-fact.

82. Based on a single violation of the FDCPA, Defendants are each liable to Plaintiff and, if this case is maintained as a class action under Fed. R. Civ. P. 23, to the Class for such relief as is allowed under 15 U.S.C. § 1692k.

### VII.  COUNT TWO: VIOLATION OF THE TDCA

83. The *Factual Allegations* are incorporated by reference.

84. MIDLAND FUNDING is engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

85. MIDLAND FUNDING is a "debt collector" within the meaning of Tex. Fin. Code § 392.001(5).

86. MCM is engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

87. MCM is a "debt collector" within the meaning of Tex. Fin. Code § 392.001(5).

88. MCM is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

89. The Debts are each a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

90. TARAZON is a "consumer" within the meaning of Tex. Fin. Code § 392.001(1).

91. Defendants violated the TDCA including but not limited to:

91.01.  Tex. Fin. Code § 392.301(a)(8) by using threats, coercion or attempts to coerce employing threats to take action prohibited by law;

91.02. Tex. Fin. Code § 392.304(a)(8) by misrepresenting the character, extent, or amount of a consumer debt and whether a legal obligation exists for the consumer to pay it; and

91.03. Tex. Fin. Code § 392.304(a)(19) by using false, deceptive, and misleading representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

92. The Defendants' illegal conduct invaded the rights of Plaintiff which are protected by the TDCA, the invasion of which caused injury-in-fact.

### VIII. PRAYER FOR RELIEF.

93. WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendants, MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING LLC, and JOHN DOES 1 to 10, jointly and severally, as follows:

### A. *With respect to Court One:*

93.01. Certifying this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23 including defining the Class, defining the class claims, and appointing Plaintiff's attorneys as class counsel;

93.02. Awarding such actual damages as may be proven to Plaintiff and to the members of the Class pursuant to 15 U.S.C. § 1692k(a)(1);

93.03. Awarding statutory damages for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

93.04. Awarding of statutory damages for the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

93.05. An incentive award for Plaintiff, in connection with her services to the

Class in an amount to be determined by the Court after judgment is entered in favor of the Class;

93.06. Adjudging this action to be a successful action under 15 U.S.C. § 1692k(a)(2)(B)(3) and awarding reasonable attorneys' fees including litigation expenses;

93.07. Awarding costs of suit as allowed by law; and

93.08. For such other and further relief as may be just and proper.

**B. With respect to Count Two:**

93.09. Certifying this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23 including defining the class, defining the class claims, and appointing Plaintiff's attorneys as class counsel;

93.10. Awarding injunctive relief to prevent or restrain further violations of Chapter 392 of the Texas Finance Code pursuant to Tex. Fin. Code § 392.403(a)(1);

93.11. Awarding such actual damages as may be proven to Plaintiff and to the members of the Class pursuant to Tex. Fin. Code § 392.403(a)(2);

93.12. An incentive award for Plaintiff, in connection with her services to the Class in an amount to be determined by the Court after judgment is entered in favor of the Class;

93.13. Adjudging Plaintiff to have successfully maintained an action under Tex. Fin. Code § 392.403(a), and awarding reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403(b);

93.14. Awarding costs of suit as allowed by law; and

93.15. For such other and further relief as may be just and proper.

## IX. JURY DEMAND.

94. Demand is hereby made for trial by jury.

Dated: March 15, 2018

Respectfully submitted,

*s/ Andrew T. Thomasson*
Andrew T. Thomasson, Attorney-in-Charge
 NJ Bar No. 048362011; SDTX No. 2347873
Philip D. Stern
 NJ Bar No. 045921984; SDTX No. 3063738
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081-1315
Telephone: (973) 379-7500
Facsimile: (973) 532-5868
E-Mail: andrew@sternthomasson.com
E-Mail: philip@sternthomasson.com

William M. Clanton
 TX Bar No. 24049436; SDTX No. 1420489
LAW OFFICE OF BILL CLANTON, P.C.
926 Chulie Drive
San Antonio, TX 78216
Telephone: (210) 226-0800
Facsimile: (210) 338-8660
E-Mail: bill@clantonlawoffice.com

*Attorneys for Plaintiff, Marcela Tarazon*